IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **PAUL E. KIRBY,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:22-cv-02197-JMC |
| **LOUIS DEJOY** *POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE*, | * | |
| | * | |
| *Defendant.* | | |

\* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

On August 31, 2022, Plaintiff Paul Kirby filed his Complaint (ECF No. 1) alleging that Defendant (1) discriminated against Plaintiff based on Plaintiff's age in violation of the "Age Discrimination in Employment Act of 1967 ['ADEA'], 29 U.S.C.S. § 623(a)(1), . . ." and (2) unlawfully retaliated against Plaintiff in violation of "Title VII of the 1964 Civil Rights Act ['Title VII')], . . . 42 USCS §§ 2000e–2000e-17 . . . ." *See* (ECF No. 1 at p. 3, ¶ 6).[1] Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment in response to the Complaint on February 15, 2023 (ECF No. 20), which the Court denied as moot because Plaintiff subsequently amended his Complaint as a matter of right on March 8, 2023, under Fed. R. Civ. P. 15(a)(1)(B). (ECF No. 21). Defendant then submitted another Motion to Dismiss or in the Alternative for Summary Judgment on March 29, 2023 (ECF No. 25), which was likewise rendered moot after the Court granted Plaintiff's Motion for Leave to File a Second Amended Complaint on July 21, 2023. (ECF Nos. 29, 31). Presently before the Court is Defendant's renewed Motion to Dismiss or in the Alternative for Summary Judgment (the "Motion"). (ECF No. 33). The Court

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

has considered the Motion, Plaintiff's Opposition thereto (ECF No. 36), and Defendant's Reply (ECF No. 37). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Defendant's Motion will be **GRANTED**.

I.   BACKGROUND

At all times relevant to Plaintiff's claims, Plaintiff was a fifty-seven (57) year-old mail carrier employed by Defendant at the Frostburg, Maryland, Post Office. (ECF No. 32 at p. 3).[2] In addition to his typical duties as mail carrier, Plaintiff also served as the National Association of Letter Carriers' ("NALC") Branch President for Local 638 Cumberland, Maryland, and on the NALC Maryland/District of Columbia State Executive Board to represent bargaining unit members on grievances at the Frostburg, Maryland, office. *Id.* at ¶¶ 31–33. Plaintiff claims that he was discriminated against primarily by the Postmaster, Kelly Kaylor, and that he had no issues, discriminatory or otherwise, while working for Defendant prior to the Postmaster's alleged discriminatory conduct. *Id.* at ¶¶ 8, 35–37.

On August 14, 2018, Plaintiff and the Postmaster met in the Postmaster's office for a telephone conference regarding an unrelated grievance. *Id.* at ¶ 47. According to Plaintiff, the Postmaster told Plaintiff that "she would buy [Plaintiff] a fake set of lips and a big fat ass and help [Plaintiff] out the door," which Plaintiff believes was a reference to Plaintiff's age and inability to complete his carrier route as efficiently as younger employees. *Id.* at ¶ 49,187–90. Later that day

---

[2] At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022). Similar to the Court's prior written decisions in this case, the Court attempts to construe the facts in a chronological manner to the best of its ability. Plaintiff's Second Amended Complaint—like the two previous iterations of Plaintiff's Complaint—lacks clarity regarding the timing of allegations, and it often alleges outright contradictions. For instance, Plaintiff begins the Second Amended Complaint by stating that he is still employed by Defendant as a carrier, but then concludes his Second Amended Complaint by indicating that he is no longer employed by Defendant as a carrier. *See* (ECF No. 32 at ¶¶ 7, 406).

Plaintiff was informed by his supervisor that Plaintiff was being put on "Emergency Placement" for allegedly placing his hands around the Postmaster's neck during the meeting. *Id.* at ¶ 51.[3] Plaintiff then filed an Equal Employment Opportunity Commission ("EEOC") complaint against Defendant and the Postmaster in August 2018, although Plaintiff fails to provide any details whatsoever regarding the basis or nature of that claim other than asserting that the August 2018 EEOC claim involved the Postmaster.[4] *Id.* at ¶¶ 291, 316. This is particularly confusing for the Court because Plaintiff asserts multiple times that he was not discriminated against prior to February 2019. *See id.* at ¶¶ 110, 156.

Nevertheless, Plaintiff was eventually provided with a Notice of Removal on October 5, 2018, following the August 14, 2018, alleged incident with the Postmaster. *Id.* at ¶ 56. Plaintiff and Defendant then engaged in pre-arbitration regarding the employment claim "Around the end of November" 2018. *Id.* at ¶ 54. This pre-arbitration resulted in a settlement between Plaintiff and Defendant on February 4, 2019, under which Plaintiff voluntarily withdrew the EEOC claim, the Notice of Removal was reduced to a Letter of Warning, and Plaintiff was allowed to return to work on February 11, 2019. *Id.* at ¶¶ 53–59. Plaintiff was also permitted to receive all backpay from his Emergency Placement and to adjust his postal route. *Id.* at ¶¶ 58, 318. Also on February 4, 2019, the Postmaster reportedly stormed out of the office upon learning of the settlement and attempted to file a restraining order against Plaintiff before filing second degree assault charges

---

[3] Plaintiff's Second Amended Complaint is inconsistent as to when exactly the alleged choking incident occurred. Plaintiff repeatedly states throughout his Second Amended Complaint that the alleged choking incident happened on August 14, 2018, yet Plaintiff also "denie[s] all allegations concerning the *September* 14, 2018 incident" despite mentioning nowhere else in the Second Amended Complaint that any actions giving rise to Plaintiff's lawsuit occurred on September 14, 2018. *See* (ECF No. 32 at ¶¶ 47–52, 71, 297) (emphasis added).

[4] Specifically, Plaintiff avers that the August 2018 claim constituted a protected activity, that Defendant knew about the claim because Plaintiff was required to serve Defendant with notice of the claim since it involved the Postmaster, and that Plaintiff and Defendant settled the claim which resulted in Plaintiff withdrawing it. (ECF No. 32 at ¶¶ 308–16). Nevertheless, Plaintiff includes no facts indicating the nature of the claim, the events giving rise to that claim, when those events occurred, or any other additional facts explaining the August 2018 claim.

against Plaintiff on February 5, 2019, regarding the August 14, 2018, choking incident. *Id.* at ¶¶ 61–63. Furthermore, the Postmaster frustrated the processing of Plaintiff's backpay and refused to adjust Plaintiff's carrier route. *Id.* at ¶¶ 69–70, 323.

The underlying theme throughout Plaintiff's Second Amended Complaint is that, following the February 2019 settlement, the Postmaster subjected Plaintiff to ridicule and adverse employment actions because the Postmaster took issue with Plaintiff's age and inability to perform his carrier route within eight hours. *See generally id.* Plaintiff's carrier route consisted of a walking portion and a driving portion. *Id.* at ¶¶ 13–14, 174. During the last several years, Plaintiff began struggling to complete his route within eight hours and routinely needed an additional 1 to 1.5 hours to complete his route. *Id.* at ¶ 167. The Postmaster repeatedly told Plaintiff—at unspecified times—that Plaintiff was too old to complete the route, and that younger carriers would not have difficulty completing the route within eight hours. *Id.* at ¶¶ 177–78. According to Plaintiff, the Postmaster eventually removed the driving portion of Plaintiff's route to both prevent Plaintiff from completing the route and to punish Plaintiff for not completing the route within eight hours. *Id.* at ¶¶ 239–40. The Postmaster also often placed younger carriers on Plaintiff's route and told those younger carriers—at unspecified times—that Plaintiff is old and needs to retire. *Id.* at ¶¶ 191–94.

On several occasions, Plaintiff was instructed to finish his route within nine and a half hours because he could not complete the route within eight hours. *Id.* at ¶ 212. Despite Plaintiff receiving this permission, the Postmaster would lodge disciplinary complaints against Plaintiff alleging that (1) Plaintiff was claiming unauthorized overtime and (2) Plaintiff's own conduct prevented him from completing his route on time. *Id.* at ¶ 225–28. In fact, "On numerous occasions, the Postmaster had informed the Plaintiff, other supervisors and employees of

[Defendant] the Postmaster would fire the Plaintiff for not being able to finish the Plaintiff's route on time." *Id.* at ¶ 236. Plaintiff alleges that the Postmaster previously employed similar tactics against another member of Plaintiff's protected class, Jamie Hill. *Id.* at ¶ 233. As Plaintiff's ability to complete his route within eight hours continued to degrade, the Postmaster persisted in her derogatory comments regarding Plaintiff's age. *Id.* at ¶ 245–49. This included the Postmaster "threaten[ing] the Plaintiff stating that the Postmaster would withdraw the assault charges against the Plaintiff if the Plaintiff retired" on August 23, 2019. *Id.* at ¶ 12, 131.

Regarding route adjustments, those adjustments focus on how much volume of mail the carrier is completing and transfers the remainder to another carrier. *Id.* at ¶ 171. Although Defendant approved a route adjustment for Plaintiff, the Postmaster refused to implement that adjustment. *Id.* at ¶ 181. Unlike Plaintiff, Eric Schweister—who is significantly younger than Plaintiff—received such a route adjustment. *Id.* at 264.

Ultimately, the crux of Plaintiff's Second Amended Complaint is that the Postmaster "openly retaliated against the Plaintiff due to the settlement." *Id.* at ¶ 358. In addition to the alleged acts of disparate treatment explained immediately above, Plaintiff alleges that the Postmaster's retaliation efforts included her filing assault charges against Plaintiff and attempting to induce Plaintiff's retirement in exchange for the Postmaster's revocation of those charges. *Id.* at ¶¶ 338, 368. Furthermore, on July 23, 2020, Plaintiff called his office at 7:20 a.m. and stated that he was too sick to work that day. *Id.* at ¶ 27. Although Defendant had a practice of permitting employees to rescind a sick day if they did so before 8:00 a.m., the Postmaster did not allow Plaintiff to do so despite his efforts to rescind the sick day before 8:00 a.m. *Id.* at ¶¶ 27–29, 146.

Plaintiff then filed a formal Complaint of Discrimination in the Postal Service on November 21, 2019, which was subsequently supplemented through Plaintiff's contacts with the

EEOC in July 2020 and August 2020. (ECF No. 33-3). Therein, Plaintiff alleged three specific acts of discrimination: (1) on August 23, 2019, the Postmaster threatened that if Plaintiff retired, the Postmaster would withdraw the assault charges; (2) on May 20, 2020, and other possible dates, Plaintiff was instructed to give up the mounted portion of his route because other carriers could get it done faster; and (3) on July 23, 2020, Plaintiff called out sick at 7:20 a.m., and when he called back at 8:00 a.m. to cancel the sick leave, Plaintiff was not allowed to do so. (ECF No. 33-3 at p. 3). After investigating these employment discrimination claims, the EEOC issued a Decision in favor of Defendant. Regarding Plaintiff's claims that he was discriminated against on the basis of his age, the EEOC concluded—under summary judgment standards—that: (1) the August 23, 2019, "threat" did not constitute an adverse employment action because it was "unaccompanied by concrete action" and thus "he suffered no tangible harm and . . . cannot be considered an aggrieved employee"; (2) "While [Plaintiff] did not receive his preferred type of assistance with his route" because he was instructed to give up the mounted portions of his route, mere "subjective dissatisfaction with assignments does not constitute adverse employment action"; and (3) Plaintiff may have suffered an adverse employment action when he was required to use eight hours of sick leave against his wishes, but that Defendant set forth a legitimate, non-discriminatory reason for not allowing Plaintiff to rescind his sick leave because "management already had his route covered and thus the [Defendant] had no route for him that day." (ECF No. 33-9 at pp. 9–12). The EEOC also concluded that Plaintiff's retaliation claim failed as a matter of law because Plaintiff's "relevant prior EEO activity occurred 10 months before event 1;[5] 1 year

---

[5] The EEOC's conclusion highlights another inconsistency in Plaintiff's Second Amended Complaint. Plaintiff's EEO Investigative Affidavit detailing his charge of discrimination states that the prior protected activity which Plaintiff engaged in giving rise to his retaliation claims was his "EEO [that] was filed on 10/24/2018." (ECF No. 33-4 at p. 2). However, Plaintiff provides no specifics as to this supposed October 24, 2018, claim. Rather, Plaintiff's only reference to October 24, 2018, in his Second Amended Complaint is that October 24, 2018, is the date which Plaintiff's Emergency Placement was rescinded. (ECF No. 32 at ¶ 55; ECF No. 32-13).

6

and 7 months before event 2; and 1 year and 9 months [before] event 3," and thus there was no reasonable inference that the allegedly discriminatory conduct was retaliatory in nature. *Id.* at pp. 12–13).

## II. LEGAL STANDARD

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted). To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted). In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole." *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted). The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); *see also Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

"As a general rule, the court does not consider extrinsic evidence at the motion to dismiss stage . . . ." *Reamer v. State Auto. Mut. Ins. Co.*, 556 F. Supp. 3d 544, 549 (D. Md. 2021) (other citation omitted). However, "the court may consider, without converting the motion to dismiss

into one for summary judgment, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the document is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). "A document is 'integral' to the complaint if its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Reamer*, 556 F. Supp. 3d at 59 (citing *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)). Moreover, "In employment discrimination cases" such as this one, "courts often take judicial notice of EEOC charges and EEOC decisions" without converting a motion to dismiss into one for summary judgment. *Yampierre v. Balt. Police Dep't*, No. ELH-21-12-9, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (citing *Campbell v. Mayorkas*, No. 3:20-cv-697-MOC-DSC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).

Defendant styles its Motion as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. "A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). The Court has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." *Id.* at 626 (citation omitted). "Ordinarily, summary judgment is inappropriate where the parties have not had an opportunity for reasonable discovery." *Id.*

Here, the Court will exercise its discretion by treating the Motion as one to dismiss under Fed. R. Civ. P. 12(b)(6) and limit its review to the instant pleadings while taking "judicial notice of [Plaintiff's] EEOC charges and EEOC decisions." *Yampierre*, 2022 WL 3577268 at *17; *see*

*also Bowie v. Univ. of Md. Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint."); *Stennis v. Bowie State Univ.*, 236 F. Supp. 3d 903, 907 n.1 (D. Md. 2017), *aff'd in part, vacated in part on other grounds*, 716 F. App'x 164 (4th Cir. 2017) (noting that "the EEOC charge and its related documents are integral to the Complaint . . . .").

### III.   ANALYSIS

A.   Plaintiff Fails to Allege a Materially Adverse Employment Action[6]

The ADEA provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a *prima facie* case of disparate treatment when alleging unlawful employment discrimination on the basis of age, a Plaintiff is required to show: "(1) he is a member of a protected class; (2) he was performing at a level that met his employer's legitimate expectations at the time of the adverse employment action; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside his protected class more

---

[6] The parties argue initially whether certain facts and instances of discrimination in Plaintiff's Second Amended Complaint exceed the scope of Plaintiff's EEOC charge and therefore whether Plaintiff failed to exhaust his administrative remedies. *Compare* (ECF No. 33-1 at pp. 13–16), *with* (ECF No. 36-1 at pp. 19–22); *see Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) ("It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC.") (citing 42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d)); *Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014) ("The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint."); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (noting that "factual allegations made in formal litigation must correspond to those set forth in the administrative charge"). The Court need not rule on this issue because it finds, for the reasons that follow, that Plaintiff fails to state claims for relief under both the ADEA and Title VII, even assuming *arguendo* all the facts and charges of discrimination set forth in Plaintiff's Second Amended Complaint were properly raised before the EEOC.

9

favorably." *Dones v. Donahoe*, 987 F. Supp. 2d 659, 667 (D. Md. 2013).[7] Under Title VII—which makes it unlawful for an employer to discriminate against an employee because he opposed a practice prohibited by Title VII or made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under Title VII—a *prima facie* case of retaliation under Title VII "has three elements: the plaintiff must prove that he (1) engaged in a protected activity; (2) suffered an adverse employment action; and (3) that a causal link between the protected activity and the adverse employment action exists." *Ciociola v. Balt. City Bd. of Sch. Comm'rs*, No. CV CCB-15-1451, 2017 WL 4280729, at *6 (D. Md. Sept. 27, 2017); *see also* 42 U.S.C. § 2000e-3(a).

Notably, both statutes require that a plaintiff asserting claims thereunder must allege that he suffered an adverse employment action. *See Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (declaring that, in employment discrimination claims brought under the ADEA, the ADEA "require[s] as an absolute precondition to suit that some adverse employment action have occurred"); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) ("To prevail on a Title VII claim, 'the existence of some adverse employment action is required.'") (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). In the context of discrimination claims based on an employee's protected status such as age like Plaintiff's ADEA claim, "An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland*, 487 F.3d at 219. "The mere fact that a new job assignment is less appealing to the employee, however, does not constitute adverse employment action . . . There must be some *significant* detrimental effect and absent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a

---

[7] While "a plaintiff is not required to plead a prima facie case of discrimination" under the ADEA to survive a Rule 12(b)(6) motion, a plaintiff must nevertheless "plausibly allege that he is (1) over the age of 40, and (2) experienced discrimination by a federal employer (3) because of his age." *Song v. Becerra*, No. 20-1554, 2021 WL 3732961, at *1 (4th Cir. 2021).

new position . . . does not constitute an adverse action even if the new job does cause some modest stress not present in the old position." *Id.* (emphasis added). What constitutes an adverse employment action in Title VII retaliation claims, though, extends more broadly. Rather, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in [the Title VII retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).

Plaintiff's Second Amended Complaint does not allege an adverse employment action taken by Defendant against Plaintiff under either standard. *See Harris v. Charles E. Smith Life Cmtys.*, No. CV MJM-21-1242, 2022 WL 4777592, at *7 (D. Md. Oct. 3, 2022) ("To state a plausible claim of discrimination under Title VII or the ADEA, Plaintiff must allege an action by her employer that 'adversely affect[ed] the terms, conditions, or benefits of [her] employment.'") (quoting *Holland*, 487 F.3d at 219). "Employment actions such as 'discharge, demotion, decrease in pay or benefits, loss of job, title or supervisory responsibility, or reduced opportunities for promotion' are typically found to be an adverse action." *Id.* (quoting *Boone v. Holdin*, 178 F.3d 253, 255–56 (4th Cir. 1999), *abrogated on other grounds by Burlington*, 548 U.S. 53 (2008)). Plaintiff's replete references to derogatory comments made by the Postmaster and the Postmaster's criticism of Plaintiff's ability to complete his route effectively do not rise to the level of an adverse employment action. *See id.* ("However, harsh criticism, teasing, humiliation, bullying, and refusing to address employment-related complaints generally do not rise to the level of an adverse employment action."); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997);

11

*Blount v. Dep't of Health and Hum. Servs.*, 400 F. Supp. 2d 939, 942 (D. Md. 2004) ("[D]isparaging remarks made by a supervisor do not state an adverse employment action.").[8]

The August 23, 2019, offer from the Postmaster to withdraw the assault charges if Plaintiff retired also fails to qualify as an adverse employment action. The Postmaster's remark was unaccompanied by any action other than the offer itself, which Plaintiff did not accept and thus his employment did not change materially. *See Gorrasi v. Azar*, No. CV CCB-20-2389, 2021 WL 4458996, at *13 (D. Md. Sept. 29, 2021), *aff'd*, No. 21-2191, 2022 WL 6901173 (4th Cir. Oct. 12, 2022) ("A plaintiff's claim will not succeed where she fails to link the alleged adverse employment action 'to some material change in the conditions of [her] employment.'") (quoting *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)). The May 20, 2020, (and possibly other dates) directive to Plaintiff to give up the mounted portions of his route does not constitute an adverse employment action either. *See Edmonson v. Potter*, 118 F. App'x 726, 729 (4th Cir. 2004) (concluding, in the specific context of a postal worker alleging employment discrimination, that "A transfer in duties or reassignment that does not result in any decrease in salary, benefits, or rank cannot constitute an adverse employment action necessary to state a prima facie case of discrimination . . . nor is there any evidence that the changes to her work schedule or duties damaged her future career prospects"); *Dortch v. Cellco P'ship*, 770 F. App'x 643, 647 (4th Cir. 2019) ("A reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect. Examples of an adverse employment action include a decrease in compensation, job title, level of responsibility, or

---

[8] Regarding the contested additional fact that the Postmaster followed Plaintiff on his route and/or instructed other employees to spy on Plaintiff, *see supra* n. 6, the Fourth Circuit and this Court have likewise found such behavior insufficient to establish an adverse employment action. *See Munday*, 126 F.3d at 243 (concluding that directing other employees to ignore plaintiff and to spy on her, among other actions, did "not rise to the level of an adverse employment action for Title VII purposes"); *Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 485 (D. Md. 2016) (finding no adverse employment action where supervisor "humiliated [plaintiff] in two meetings, made jokes about him, and isolated him from other employees, while alleging mean-spirited behavior").

opportunity for promotion."). This is further buttressed by the fact that Plaintiff concedes he was never disciplined for failing to efficiently complete his route.[9] Likewise, Plaintiff's claim that he was discriminated against by virtue of being denied the opportunity to cancel his sick leave request on July 23, 2020, fails to qualify as an adverse employment action because Plaintiff was not disciplined or otherwise reprimanded. *See* (ECF No. 32 at ¶¶ 150–51; ECF No. 36-1 at p. 10). Nor can Plaintiff's "emergency removal in October 2018" constitute an adverse employment action because the action was not final and Defendant ultimately reduced Plaintiff's Notice of Removal to a Letter of Warning. (ECF No. 36-1 at p. 23); *see Lurie v. Meserve*, 214 F. Supp. 2d 546, 550 (D. Md. 2002) ("In order for personnel action to be an adverse employment action, the action must be final and corrective action taken by defendant cannot be used as evidence that discrimination existed . . . the final decision is the ultimate act and there [is] no legal effect from the initial actions.") (quotation omitted); *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 153–54 (4th Cir.

---

[9] Plaintiff proffers throughout his Second Amended Complaint that he suffered an adverse employment action because the Postmaster filed complaints against Plaintiff regarding his inability to effectively complete his route. *See, e.g.* (ECF No. 32 at ¶¶ 286–87); (ECF No. 36-1 at p. 10). Plaintiff neglects to include any specific details regarding these complaints such as the dates they occurred or the specific bases for the complaints. But more notably, Plaintiff admits that he was never disciplined for any such complaints. Plaintiff therefore suffered no adverse employment action either by virtue of his route change or the alleged complaints lodged against Plaintiff that resulted in no disciplinary action. *See, e.g.* (ECF No. 32 at ¶¶ 150–51) ("The Plaintiff received two pre-disciplinary interviews for failure to complete the route and the alleged sick day incident on July 23, 2020. The Plaintiff received no discipline from either of the two incidents."). Similarly, Plaintiff's allegations that the Postmaster "made repeated unauthorized overtime disciplinary complaints against the plaintiff" appear to be nothing more than speculation given that Plaintiff provided no other allegations or information regarding the dates, details, or additional circumstances surrounding those complaints. And even assuming *arguendo* that the Postmaster lodged complaints against the Plaintiff, such internal complaints are insufficient to establish an adverse employment action because Plaintiff fails to allege that the complaints "resulted in any change in benefits or had any significant impact on Plaintiff's employment status, such as *actual* termination." *Wiggins v. Balt. Police Dep't*, No. CV MJM-22-1089, 2023 WL 6381515, at *6 (D. Md. Sept. 29, 2023) (quotation omitted) (emphasis in original); *see also Yampierre*, 2022 WL 3577268 at *27 ("Ultimately, however, the internal complaints filed against plaintiff do not amount to an adverse employment action for the purpose of a disparate treatment claim under Title VII. Although conduct short of ultimate employment decisions can constitute adverse employment action, there still must be a tangible effect on the terms and conditions of employment.") (quotation omitted); *Jones v. Balt. City Bd. of Sch. Comm'rs*, No. CV ADC-18-3002, 2021 WL 147033, at *8 (D. Md. Jan. 14, 2021) ("Plaintiff also cannot establish that his placement on the corrective action plan caused him to suffer any material consequences in his employment. The mere placement on a corrective action plan, without evidence of direct economic harm (such as loss of salary, benefits, position, or promotional opportunities) does not constitute an adverse employment action."); *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 603 (D. Md. 2011) (concluding that "unwarranted reprimands" "amount[ed] to nothing more than unactionable personal slights" and therefore failed to constitute an adverse employment action).

1995). Accordingly, Plaintiff has set forth insufficient facts to plausibly allege that he suffered an adverse employment action as required under the AEDA and Title VII.

> B. Even Assuming Plaintiff Suffered Adverse Employment Action, His ADEA Claim Fails to Plausibly Allege That Such Action Was the Result of Plaintiff's Age

"An employee who alleges that her employer violated [the ADEA] 'must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the '*but for*' cause of the challenged employer decision." *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (quoting *Gross v. FLB Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)) (emphasis added). Thus, "an employee cannot prevail . . . by showing that age was one of the multiple motives for an employer's [adverse employment] decision; the employee must prove that the employer would not have [taken the adverse action against the employee] in the absence of age discrimination." *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019); *see also Gross*, 557 U.S. at 173, 177 ("[T]he ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor . . . [T]he plaintiff retains the burden of persuasion to establish that age was the '*but for*' cause of the employer's adverse action.") (emphasis added).

Plaintiff's ADEA must fail under this guidance from the Supreme Court. Although Plaintiff claims that the above proffered adverse employment actions were taken against Plaintiff because of his age, Plaintiff claimed otherwise in his EEOC charge. *See* (ECF No. 33-4 at pp. 4–5) ("The reason that Kaylor wants [Plaintiff] to retire is because of [Plaintiff's] success as a Union official. [The Postmaster] wants me gone so that in her own words, I take to [sic] long to deliver my route. She can let the younger carriers take my route and she believes that the grievances would stop if I were gone."); *see also* (ECF No. 33-5 at p. 2) (stating that Plaintiff did not know the reason that he was instructed to give up the mounted portion of his route); (ECF No. 33-5 at p.

14

7) (explaining that Plaintiff's request to cancel his sick leave was denied because the "schedule was already changed to cover [Plaintiff's] route"); (ECF No. 32 at ¶¶ 232, 252, 272). Moreover, Plaintiff's assertion that the Postmaster's alleged discriminatory actions were motivated by age-based animus is further undercut by the fact that the Postmaster was also over the age of 40 when the alleged discriminatory conduct occurred. *See* (ECF No. 33-9 at p. 2); *James v. Verizon*, 792 F. Supp. 2d 861, 869–70 (D. Md. 2011) ("[P]roof that the decision-maker is a member of the same protected class as [plaintiff] weakens any possible inference of discrimination.") (citing *Jackson v. Sch. Bd. of the City of Richmond*, No. 3:99cv642, 2000 WL 34292578 (E.D. Va. Mar. 15, 2000)); *Testa v. CareFusion*, 305 F. Supp. 3d 423, 437 (E.D.N.Y. 2018) (finding ADEA discrimination claim unsupported in part because alleged discriminators "were also members of the protected class"); *cf. Coggins v. Gov't of D.C.*, 173 F.3d 424, at *4 (4th Cir. 1999) (finding that racial bias in Title VII claim was "unlikely" where alleged discriminators were of the same protected class as plaintiff); *Dortch v. Cellco P'ship*, No. CV 3:17-145-DCC-PJG, 2018 WL 4560537, at *5 (D.S.C. Apr. 4, 2018), *report and recommendation adopted*, No. CV 3:17-145-DCC, 2018 WL 4103335 (D.S.C. Aug. 29, 2018), *aff'd*, 770 F. App'x 643 (4th Cir. 2019) (finding that evidence of "discriminatory animus based on race" was undercut by the fact that the alleged discriminators were of the same protected class). Accordingly, Plaintiff's ADEA claim must be dismissed because Plaintiff fails to plausibly allege that any potential adverse employment actions taken against Plaintiff were *but for* Plaintiff's age or the Postmaster's age-based animus.

> C. Even Assuming Plaintiff Suffered Adverse Employment Action, His Title VII Claim Fails to Plausibly Allege That Such Action Was the Result of Plaintiff Engaging in Protected Activity or Plaintiff's Age

As noted above, a properly pled Title VII retaliation case "has three elements: the plaintiff must prove that he (1) engaged in a protected activity; (2) suffered an adverse employment action;

15

and (3) that a causal link between the protected activity and the adverse employment action exists." *Ciociola*, 2017 WL 4280729 at *6. Even assuming *arguendo* that Plaintiff engaged in a protected activity[10] and suffered an adverse employment action, Plaintiff has not plausibly alleged that there is a causal link between any such purported protected activity or his age and any purported adverse employment action. Plaintiff claims that "The defendant retaliated against the plaintiff by making false allegations that lead to the August 2018 removal, the February 2019 false criminal charges, the adverse actions concerning the route adjustment and the other aforementioned disciplinary actions." (ECF No. 36-1 at p. 28).[11] The Supreme Court has recently opined that "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e-2(m)." *Univ. of Tex. Sw. Md. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also id.* at 362 ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a *but-for* cause of the alleged adverse action by the employer.") (emphasis added); (ECF No. 36-1 at pp. 28–29) (arguing that Plaintiff in the case *sub judice* was retaliated against in violation of § 2000e-3(a)). A corollary to this principal is the notion that "the claim must demonstrate a causal connection or nexus between the employee's protected action and the employer's retaliatory employment decision. To establish a nexus, a plaintiff can show either a temporal proximity between the protected activity and adverse action, or that other relevant

---

[10] The parties dispute whether Plaintiff did, in fact, engage in a protected activity. *Compare* (ECF No. 33-1 at pp. 23–25), *with* (ECF No. 36-1 at pp. 24–26). But even assuming that Plaintiff did engage in protected activity, the Court will dismiss Plaintiff's Title VII retaliation claim because Plaintiff fails to plausibly allege a causal link between any purported protected activity and any purported adverse employment action for the reasons that follow.

[11] Another inconsistency, Plaintiff asserts repeatedly in his Second Amended Complaint that Plaintiff's removal occurred in October 2018 yet states in his Opposition to Defendant's Motion that the removal occurred in August 2018. *See* (ECF No. 32 at ¶¶ 53, 56; ECF No. 36-1 at p.28). And if Plaintiff filed his EEOC charge in October 2018, the Postmaster could not have retaliated against Plaintiff in August 2018—a date that would pre-date the EEOC charge. *See* (ECF No. 33-4 at p. 2).

16

evidence indicates 'continuing retaliatory conduct and animus' toward the plaintiff." *Alberti v. Rector and Visitors of the Univ. of Va.*, 65 F.4th 151, 156 (4th Cir. 2023) (quoting *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)).

As to Plaintiff's argument that the Postmaster's report of the alleged choking incident and February 2019 lodging of criminal charges constituted actionable retaliation under Title VII, there is an obvious alternative explanation for Plaintiff's Notice of Removal and resulting criminal charges—the Postmaster's allegation that Plaintiff choked the Postmaster. Plaintiff's generalized, unsubstantiated claims that these allegations were false cannot cure the fact that the Notice of Removal and criminal charges were a result of Plaintiff allegedly choking the Postmaster rather than being the "but for" result of Plaintiff engaging in protected activity. Plaintiff not only declined to plead specific factual allegations supporting his conclusory statements that the charges were false, but also the underlying EEOC decision rendered in favor of Defendant even recognized "Supervisor Auvil and Carrier Paul Custer's corroborating statements that [Plaintiff] acknowledged engaging in this act to them . . . ." (ECF No. 33-9 at p. 3). Thus, the Court cannot conclude that the Postmaster's choking allegation and ensuing criminal charges against Plaintiff were "but for" Plaintiff engaging in protected activity or Plaintiff's age.[12]

Moreover, the Postmaster's offer to withdraw the criminal charges occurred nearly 12 months after Plaintiff's August 2018 EEOC claim and nearly 6 months after the February 2019 settlement agreement; the earliest date provided by Plaintiff regarding potential "adverse actions concerning the route adjustment" was May 20, 2020, which is nearly 21 months after Plaintiff's

---

[12] On this point, Plaintiff additionally pleads that several colleagues and customers can attest to Plaintiff being well-liked, respectful, police, and courteous. *See, e.g.*, (ECF No. 32 at pp. ¶¶ 38–46). These factual allegations do not support Plaintiff's claims. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) ("[I]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff. The alleged opinions of [plaintiff's] co-workers as to the quality of her work are similarly close to irrelevant.") (quotations and citations omitted); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

17

August 2018 EEOC complaint and nearly 15 months after Plaintiff's February 2019 settlement; and the alleged retaliatory denial of Plaintiff's request for sick leave occurred nearly 23 months after Plaintiff's August 2018 EEOC claim and nearly 17 months after Plaintiff's February 2019 settlement.[13]  Thus, there is an insufficient temporal proximity between the purported protected activities and any resulting adverse employment actions.  *See King v. Rumsfeld*, 328 F.3d 145, 152 n.5 (4th Cir. 2003) (affirming summary judgment against plaintiff on Title VII retaliation claim in part because the adverse employment action—plaintiff's termination—occurred "two months and two weeks" following defendant's notice of the EEO complaint).  Nor do Plaintiff's statements regarding the Postmaster making rude remarks to Plaintiff constitute "continuing retaliatory conduct and animus" considering that Plaintiff makes mostly generalized accusations that the Postmaster made such remarks without providing any details as to the dates, circumstances, or content of any such remarks.  *See, e.g.* (ECF No. 32 at ¶¶ 230–31, 245–49, 350–52).  Accordingly, even assuming Plaintiff suffered adverse employment action, his Title VII claim fails to plausibly allege that such action was the result of Plaintiff engaging in protected activity or Plaintiff's age.

---

[13] Similar to the alleged choking incident, Defendant also set forth a legitimate, non-retaliatory reason for denying Plaintiff's request to cancel his sick leave, which Plaintiff makes no effort to rebut.  *See* (ECF No. 33-9 at pp. 9–12).

## IV.     CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint or in the Alternative for Summary Judgment (ECF No. 33) is hereby **GRANTED**.[14] A separate Order follows.


Date: October 23, 2023                                  /s/
                                              J. Mark Coulson
                                              United States Magistrate Judge

---

[14] Plaintiff has already attempted to remedy any deficiencies in his Complaint through two amendments in response to Defendant's two prior motions to dismiss or in the alternative for summary judgment. Nor does Plaintiff "propose any further amendments or explain how further amendment could remedy" the deficiencies enumerated above. *Wash. Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, No. CV JKB-19-1854, 2020 WL 2512421, at *2 (D. Md. May 15, 2020), *aff'd*, No. 20-1643, 2020 WL 7230263 (4th Cir. Sept. 28, 2020). Accordingly, Plaintiff's Second Amended Complaint will be dismissed with prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) ("The determination whether to dismiss with or without prejudice under Rule 12(b)(6) is within the discretion of the district court."); *Adkins v. Bank of N.Y. Mellon*, Civ. No. PWG-15-3886, 2017 WL 2215131, at *1 n.2 (D. Md. May 19, 2017) (dismissing plaintiff's claim with prejudice where plaintiff had already attempted once to remedy the deficiencies pointed out by defendants but failed to adequately do so); *United States ex rel. Campos v. Johns Hopkins Health Sys. Corp.*, Civ. No. CCB-17-2156, 2018 WL 1932680, at *9 (D. Md. Apr. 24, 2018) (dismissing plaintiff's claims with prejudice where plaintiff did not seek leave to further amend his complaint nor suggest how he could successfully remedy the complaint's deficiencies)